UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL PAUL PEARSON,

                Plaintiff,                  Case No. 1:15-cv 22

v.                                        Honorable Robert Holmes Bell

OAKLAND COUNTY CIRCUIT COURT et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity, frivolousness, and failure to state a claim.

**<u>Factual Allegations</u>**

Plaintiff Samuel P. Pearson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF). He sues the Oakland County Circuit Court, Oakland County Circuit Judge Daniel Patrick O'Brien, the unknown Oakland County Circuit Court Clerk and his or her subordinate clerks (Unknown Parties #1); and the unknown Oakland County Clerk and his or her subordinate clerks (Unknown Parties #2) (collectively, the "Oakland County Defendants"). Plaintiff also sues MCF Grievance Coordinator Lashea Simons and MCF Head Librarian E. Hardiman.

In his first set of allegations, Plaintiff complains that he was denied his right to access the courts throughout his postconviction period between 1994 and the present. Reciting a litany of alleged errors, he contends that the Oakland County Defendants "lost, disregarded, or 'sanitized'" the records and files of his 1994 criminal case, during which he was convicted of assault with intent to commit murder. (Compl., docket #1, Page ID#5.) Plaintiff asserts that, 53 days after sentencing, on October 18, 1994, he read his trial court and sentencing transcripts and found at least six transcription errors in various pretrial hearing and trial transcripts, but the stenographer rejected his claims of error. Plaintiff claims that he sought postconviction discovery, but his requests were ignored. He submitted his first motion for relief from judgment on April 11, 2005, but it was never docketed. He submitted new copies, which were rejected as successive. The presiding judge on his case, Judge Tyner, resigned from office in 2006. In December 2006, Judge Ransom ordered that Plaintiff's motion for relief from judgment be filed, but the prosecutor sought reconsideration of the order, which purportedly was granted. Plaintiff complains that he was not served with notice of the motion or order. Successor Judge Daniel Patrick O'Brien allegedly returned two of Plaintiff's four

- 2 -

motions for relief from judgment in May 2007.  Plaintiff appealed the decision to the Michigan Court of Appeals and the Michigan Supreme Court, without prevailing.

Thereafter, in 2008, Plaintiff filed a habeas petition in the Eastern District of Michigan.  In an order issued on August 11, 2011, that court denied Plaintiff's 27 grounds for habeas relief because the petition was untimely and no basis existed for equitable tolling.

On April 17, 2012, Plaintiff submitted another motion for relief from judgment to the Oakland County Circuit Court.  In an order issued August 20, 2013, Judge O'Brien described the history of Plaintiff's attempts to seek relief from judgment.  (*See* Attach. A to Compl., docket #1-1, Page ID#23.)  In 2007, Plaintiff attempted to file a motion for relief from judgment, which was rejected for failure to comply with the court rules.  The notice of rejection instructed Plaintiff that any motion for relief from judgment and brief could not exceed 50 pages in length.  Plaintiff filed additionAL motions, none of which conformed with the 50-page rule, and the court again rejected the nonconforming motions and briefs.  Finally, despite the fact that Plaintiff's 2012 motion did not conform with the rules, the court permitted it to be filed and addressed it on the merits.  The opinion indicated that the court possessed no copy of Plaintiff's original motion, and Plaintiff complains that the earlier motions should have been kept, because he had mailed them to the court, intending them to be "safeguard[ed]."  (Compl., Page ID#11.)  Plaintiff also asserts that, because the court did not retain the earlier pleadings, it should have granted him an evidentiary hearing.  For these collective reasons, Plaintiff argues that the loss or destruction of his pleadings has deprived him of his right to access the state court in postconviction proceedings.

In his second set of allegations, Plaintiff complains that Defendant Hardiman has regularly failed to make copies of prisoner-requested documents, failed to schedule adequate library

time, and failed to maintain sufficient legal-library written materials or adequate access to the electronic law library (ELL). Plaintiff asserts that Hardiman retaliates against prisoners and takes actions that are arbitrary and capricious. Since late-October 2012, when the ELL was installed, Defendant Hardiman has thinned library volumes, either scrapping them or forwarding them to other libraries.[1] Plaintiff attempted to file a grievance in February 2013, but Defendant Simmons never registered a receipt of the grievance. Plaintiff complains that Hardiman repeatedly lied about ordering documents. Plaintiff filed a grievance about Hardiman's conduct on August 20, 2013. He alleges that Hardiman began to discriminate against him after the grievance. He specifically asserts that Hardiman withheld a court of appeals order for ten days (June 30 to July 9, 2014) before giving it to Plaintiff. In addition, several of Plaintiff's copy requests were rejected, delaying his receipt of copies. On July 9, 2014, Hardiman called Plaintiff over to pick up an un-copied court of appeals order, which he apparently had intended to be copied and included in his motion for reconsideration, which had since been mailed. The copies ultimately were made, but they were sent to the Michigan Supreme Court, not the Michigan Court of Appeals, where his motion was pending. Plaintiff acknowledges that he did not properly complete the form information, but he asserts that the incomplete form did not warrant the 10-day "disappearance" of his materials. (Compl., Page ID#13.) On June 8, 2014, Plaintiff sought additional library time because he was preparing legal work for three courts. Hardiman informed Plaintiff that he could not request time that conflicted with his work, even though Plaintiff indicated that his boss did not care. Plaintiff complains that he only received a net increase of one day per week, rather than the three to five days he requested. Plaintiff

---

[1] Plaintiff asserts that Hardiman's behavior contrasted sharply with her temporary replacement, Ms. Southwick, the prison legal writer. While Defendant Hardiman was on a leave of absence the next year, Ms. Southwick worked to bring the library into compliance by December 2013.

also complains that Hardiman has obtained and installed only seven ELL terminals at MCF and those few machines frequently freeze up or are locked out for hours or days at a time.  He compares the limited access at MCF to that available at Lakeshore Correctional Facility and Earnest C. Brooks Correctional Facility, where the number of ELL machines per number of prisoners is higher. Plaintiff contends that Hardiman's actions, taken together, have deprived him of access to the courts.

In his final set of allegations, Plaintiff complains that, when he was taken to segregation on May 29, 2014, unknown officers lost, stole or damaged a variety of his property. Specifically, someone dropped his typewriter, damaging the insides, as well as the outer case and lid.  When he was released from segregation on June 3, 2014 at 10:30 a.m., he did not receive his typewriter until 6:00 p.m.  Plaintiff was given an apology by unit staff for the property damage, and he did not receive a misconduct ticket for possessing contraband in the form of altered property.  He used a variety of materials to make the machine work: ink-pen parts; bolts, nuts and screws from fans; clips; and hotglue.  He never received the typewriter cover, and his wristwatch, headphones, shoe insoles, and state shoes all were lost.  Plaintiff grieved the loss of property.  He eventually was given a property-loss form, but it did not cover his typewriter.  He has not been paid for the losses totaling nearly $300.00.

For relief, Plaintiff seeks compensatory and punitive damages.  He also seeks preliminary injunctive relief barring his transfer from MCF, on the grounds that Defendant Hardiman and other staff are likely to transfer him in retaliation for filing his lawsuit.

## Discussion

I.    Immunity

The Oakland County Circuit Court is immune from suit in this Court.  Regardless of

the form of relief requested, the states and their departments are immune under the Eleventh

Amendment from suit in the federal courts, unless the state has waived immunity or Congress has

expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara*

*v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874,

877 (6th Cir. 1986).   A state's Eleventh Amendment immunity from suit in the federal courts is in

the nature of a jurisdictional defense.  *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974).  The Court

may therefore raise Eleventh Amendment immunity on its own motion.  *See Estate of Ritter v. Univ.*

*of Mich.*, 851 F.2d 846 (6th Cir. 1988).

The circuit courts of the State of Michigan are clearly arms of the state and, thus,

immune from suit.  *See, e.g., Nicklay v. Eaton County Circuit Court*, No. 1:08-cv-211, 2008 WL

2139613, at *5 (W.D. Mich. May 20, 2008).  Under the Michigan Constitution, the judiciary is a

separate and independent branch of state government.  *See Judicial Attorneys Ass'n v. State of*

*Michigan*, 586 N.W.2d 894, 897-98 (Mich. 1998).  Each state court is part of the "one court of

justice" established by the Michigan Constitution. MICH. CONST. art. VI, § 1 ("The judicial power

of the state is vested exclusively in one court of justice which shall be divided into one supreme

court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one

probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house."); *see Smith v. Oakland County Circuit Court*, 344 F. Supp. 2d 1030, 1055 (E.D. Mich. 2004). The circuit courts are part of the state government, not the county or the city. *Judges of the 74th Judicial Dist. v. Bay County*, 190 N.W.2d 219, 224 (Mich. 1971). The Sixth Circuit squarely has held that suits against Michigan courts are barred by Eleventh Amendment sovereign immunity. *See Abick*, 803 F.2d at 877. The Sixth Circuit decision is but one of numerous federal court holdings recognizing Eleventh Amendment immunity in suits brought against the state courts. *See Harmon v. Hamilton County Court of Common Pleas*, 83 F. App'x 766, 768 (6th Cir. 2003); *Metz v. Supreme Court of Ohio*, 46 F. App'x 228, 236-37 (6th Cir. 2002); *Mumford v. Basinski*, 105 F.3d 264, 268-70 (6th Cir. 1997); *see also Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007); *Zabriski v. Court Admin.*, 172 F. App'x 906, 908 (11th Cir. 2006); *Wilson v. Puma County Superior Court*, 103 F. App'x 285, 286 (9th Cir. 2004); *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995). Furthermore, civil rights actions under 42 U.S.C. § 1983 may only be brought against a "person," and circuit courts, as arms of the state, are clearly not persons within the meaning of the statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Oakland County Circuit Court must therefore be dismissed on grounds of Eleventh Amendment immunity.

Plaintiff next alleges that Judge O'Brien and unknown judicial clerks (Unknown Party #1) violated his constitutional rights when they rejected his nonconforming motions for relief from judgment, failed to maintain copies of all of his rejected submissions, failed to ensure correct trial transcripts, and failed to grant him an evidentiary hearing. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general

principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that determining whether pleadings conform with the rules and whether a defendant is entitled to an evidentiary hearing or relief from judgment are judicial acts. Judge O'Brien therefore was acting within his jurisdiction in taking all of the alleged actions.

Moreover, Plaintiff also is not entitled to injunctive relief under § 1983 for Defendant O'Brien's actions. Under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, any claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Accordingly, Judge Daniels is absolutely immune from liability. Because Judge Daniels is clearly immune from liability in this case, Plaintiff may not maintain an action against him. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

Defendants Unknown Party # 1 (the Oakland County Judicial Clerk and his or her subordinates and staff) and Unknown Party #2 (the Oakland County Clerk and his or her subordinates) also are entitled to immunity for their actions in docketing Plaintiff's filings and in rejecting pleadings that did not comport with the court rules. Absolute judicial immunity is extended to non-judicial officers who perform "quasi-judicial" duties. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune is also protected from suit seeking monetary damages); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Lyle v. Jackson*, No. 02-1323, 2002 WL 31085181, at *1 (6th Cir. Sept. 17, 2002) (quasi-judicial immunity applied to claims against state court clerks who allegedly failed to provide prisoner with requested copies of previous filings and transcripts); *Bradley v. United States*, 84 F. App'x 492 (6th Cir. 2003) (federal court clerk). *Cf. Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 437 & n.11 (1993) (court reporter not

entitled to absolute immunity for preparing transcripts because that function is ministerial; it does not exercise the kind of judgment protected by judicial immunity). In rejecting Plaintiff's proposed filings for nonconformance and in preparing court transcripts, Defendants Unknown Party #1 and Unknown Party #2 clearly were performing tasks that were intertwined with the judicial process. They therefore are entitled to quasi-judicial immunity.

II.     Frivolousness

Plaintiff's allegations concern conduct that occurred between 1994 and the present. To the extent that he alleges conduct that occurred more than three years prior to filing, his claims are barred by the statute of limitations.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff asserts claims arising over the 20-year period between October 13, 1994 and October 2014.  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, all claims accrued on the date they occurred.  Plaintiff did not file his complaint until January 6, 2015.  As a result, the claims that accrued prior to January 6, 2012 are barred by the statute of limitations.  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991);  *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate.  *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000).  Accordingly, Plaintiff's claims arising out of conduct prior to January 6, 2011 must be dismissed as frivolous.

III.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Simons

Plaintiff alleges that Defendant Simons failed to process his grievance correctly and never issued a receipt of the grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply because a an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Simons engaged in any active unconstitutional behavior.

Moreover, Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams*

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).   Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant Simons' conduct did not deprive him of due process.

### B.      Defendant Hardiman

Plaintiff complains that Defendant Hardiman deprived him of access to the courts by restricting the amount of his access to the law library, delaying or obstructing his requests for copies, eliminating necessary legal books, failing to secure sufficient ELL terminals and failing to keep them in working conditions.[3]  In addition, Plaintiff asserts that Hardiman retaliated against him for filing a grievance against her.

#### 1.      Access to the courts

Plaintiff alleges that Defendant Hardiman denied him access to the courts.  It is well established that prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal

---

[3]Plaintiff also alleges that Defendant Hardiman denies law-library access to prisoners other than himself. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).  As a consequence, to the extent that Plaintiff seeks relief on the basis of Defendant Hardiman's treatment of other prisoners, he fails to state a claim.

documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.
The right of access to the courts also prohibits prison officials from erecting barriers that may impede
the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

      An indigent prisoner's constitutional right to legal resources and materials is not,
however, without limit. In order to state a viable claim for interference with his access to the courts,
a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey
v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must
plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal
materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.
*Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The
Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions to
> slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,
habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391
(6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.
*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed
actual injury to include requirement that action be non-frivolous).

      In addition, the Supreme Court squarely has held that "the underlying cause of
action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff argues that the limits on his access to the law library and delays in the copying of his documents amount to actual injury. His argument is meritless. First, Plaintiff fails entirely to articulate the substance of his pending legal actions, much less how those actions have been harmed. As a consequence, he fails to meet the pleading requirements under *Christopher*, 536 U.S. 415. In addition, although Plaintiff's allegations show that he would like more library time and a better-equipped library, nothing in his allegations suggests that any of his three pending actions has been impacted by library limitations. He merely suggests that the cumulation of frustrating experiences with Defendant Hardiman is sufficient to demonstrate actual injury, even if none of those experiences resulted in a negative legal consequence. Neither Plaintiff's frustration nor his claim that other facilities and librarians within the MDOC are better equipped and operated supports an inference that he is being denied his right to access the courts.

2. Retaliation

Plaintiff next claims that Defendant Hardiman limited his library hours and interfered with the copying of his documents in retaliation for Plaintiff's having filed a grievance against her in February 2013. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person

of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Plaintiff therefore meets the first prong of the *Thaddeus-X* standard. However, even assuming that frustrating limitations on library access might rise to the level of adverse action, Plaintiff fails to allege a causal connection between the grievance and any negative actions by Hardiman.

Under some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

In the instant case, Plaintiff's allegations of retaliation are wholly conclusory. He does not even allege temporal proximity. According to the complaint, Plaintiff filed his grievance in February of 2013, though Defendant Simons did not locate and respond to the grievance until August 20, 2013. Plaintiff alleges, however, that Defendant Hardiman's allegedly retaliatory conduct did not begin until June 8, 2014, nearly ten months after his grievance was logged. Given

the length of time between the logging of the grievance and Hardiman's actions, no reasonable inference of causation can be drawn. In addition, Plaintiff makes no other factual allegations suggesting that Defendant Hardiman had a retaliatory motive. Indeed, Plaintiff alleges that Defendant Hardiman routinely applies a restrictive and "arbitrary" interpretation of library policies and access to copying, without regard to which prisoner is asking. (Compl., Page ID#13.) Such allegations undermine any inference that Defendant Hardiman acted with a retaliatory motive toward Plaintiff.

### C. Property Loss

In his final set of allegations, Plaintiff complains that, when he was taken to segregation, various items of his personal property were lost and his typewriter was dropped and badly damaged. Plaintiff does not allege who misplaced his property or damaged his typewriter.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations

as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails even to mention which Defendant was responsible for his losses. His allegations therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Even were Plaintiff able to identify the responsible Defendant, he nevertheless would fail to state a claim. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

- 19 -

Plaintiff has not and cannot sustain his burden in this case.  Although Plaintiff alleges that he was not successful in obtaining complete relief for his losses, he does not allege that remedies were unavailable to him.  In fact, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Plaintiff expressly acknowledges that he could have requested a property-loss or damage form, but he instead filed a grievance, which provided him no relief.   The fact that Plaintiff did not initially understand the correct procedure does not alter the availability of that procedure. In addition, aggrieved prisoners may submit claims for property loss of less than $1,000 to the State Administrative Board.   MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Plaintiff does not allege that he submitted such a claim.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  For all these reasons, Plaintiff's due process claim is barred.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on grounds of immunity, frivolousness and

failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: February 19, 2015                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE